RANDY S. GROSSMAN
United States Attorney
JOSEPH S. GREEN (Cal. Bar No. 251169)
GEORGE V. MANAHAN (Cal. Bar No. 239130)
JOSHUA C. MELLOR (Cal. Bar No. 255870)
Assistant United States Attorneys
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 546-6955
Email: joseph.green@usdoj.gov

Attorneys for United States of America


Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 8:21-CR-0112-JLS |
|---|---|
| Plaintiff, | |
| v. | GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTION FOR A JURY QUESIONNAIRE |
| BRIAN JAVAADE MESHKIN (1), STEVEN SAMUEL FICHTELBERG (2), KIRT THOMAS PFAFF (3), BRUCE WALTER GARDNER (4), DANIEL RONALD KENDALL (5), ABRAHAM ALAN CHERRICK (6), LESTER ALAN ZUCKERMAN (7), ASSAF TZUR GORDON (8), OSSAMA ANTOINE JAWHAR (9), | Judge: Hon. Josephine L. Staton<br>Date: August 26, 2022<br>Time: 9:30 a.m.<br>Place: Courtroom 8A<br>Time Est: 15 minutes |
| Defendants. | |

Plaintiff United States of America, by and through its counsel from the United States Attorney's Office for the Southern District of California, Assistant United States Attorneys Joseph S. Green, George V. Manahan, and Joshua C. Mellor, hereby files its opposition to defendants' motion for a jury questionnaire.

Dated: July 29, 2022                Respectfully submitted,

                                    RANDY S. GROSSMAN
                                    United States Attorney


                                    /s/ *George Manahan*
                                    JOSEPH S. GREEN
                                    GEORGE V. MANAHAN
                                    JOSHUA C. MELLOR
                                    Assistant United States Attorneys

                                    Attorneys for Plaintiff
                                    UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

Defendant Dr. Lester A. Zuckerman, joined by defendants Tony Jawhar, Dr. Abraham Cherrick, Dr. Assaf Gordon, and Dr. Daniel Kendall (collectively "Defendants"), move for an Order requiring the members of the venire to complete a proposed 30-page jury questionnaire. (ECF Nos. 151-156) The United States does not believe the proposed questionnaire is appropriate in this case for the reasons discussed below.

**II.  ARGUMENT**

**A.  The Court Should Deny Defendants' Motion for a Jury Questionnaire**

A criminal defendant's right to an impartial jury under the Sixth Amendment is largely the responsibility of the district judge. *See Rosales-Lopez v. United States*, 451 U.S. 182, 189 (1981). Because district judges must base their decisions regarding the empaneling of an impartial jury based largely on their immediate perceptions, they are "accorded ample discretion in determining how best to conduct the voir dire." *Id.* "Federal Rule of Criminal Procedure 24(a) furthers this purpose by permitting a trial judge to conduct an examination of prospective jurors, during which 'the court shall permit the defendant or the defendant's attorney and the attorney for the government to supplement the examination by such further inquiry as it deems proper . . . '" *United States v. Howell*, 231 F.3d 615, 627-28 (9th Cir. 2000). "It is wholly within the judge's discretion to reject supplemental questions proposed by counsel if the voir dire is otherwise reasonably sufficient to test the jury for bias or partiality." *Paine v. City of Lompoc*, 160 F.3d 562, 564-65 (9th Cir. 1998). Furthermore, a district

judge may act within his or her discretion by posing questions to potential jurors as a group rather than asking questions to each juror individually. *See United States v. Nielsen*, 1 F.3d 855, 859 (9th Cir. 1993).

A screening jury questionnaire is sometimes used as an aid to voir dire when an unusually large number of prospective jurors must be used or there are other jury concerns, such as in capital cases, where an extraordinary risk of racial or religious bias exists, where an anonymous jury is needed because of a defendant's willingness to tamper with the judicial process, or where there has been extensive pre-trial publicity. *See United States v. Quinones*, 511 F.3d 289, 299–300 (2d Cir. 2007) (collecting cases). The only one of the four cases cited by Defendants involving use of a screening jury questionnaire, *Skilling v. United States*, 561 U.S. 358 (2010), used a 14-page questionnaire based on the need to screen an unusually large number of prospective jurors and the pervasive pre-trial publicity. In *Skilling*, the United States prosecuted the Chief Executive Officer of "Enron Corporation, then the seventh highest-revenue-grossing company in America, [which] crashed into bankruptcy." *See id.* at 367, 371. The case was tried by the District Court for the Southern District of Texas (i.e., in the Houston, Texas area). There was an unusually high potential for prejudice stemming from the large number of victims in Houston, including the thousands of Enron employees who lost their jobs and saw their retirement accounts wiped out, and many other Houstonians who suffered spillover economic effects. *See id.* at 375-76; see also *id.* at 428 ("As the effects rippled through the local economy, thousands of additional jobs disappeared, businesses shuttered, and community groups that once benefited from Enron's largesse felt the loss of

millions of dollars in contributions.") and *id at* 435 ("It is against this backdrop of widespread community impact and pervasive pretrial publicity that jury selection in Skilling's case unfolded.") (J. Sotomayor, concurring in part and dissenting in part).

This case is nothing like *Skilling* in term of potential for prejudice or pretrial publicity. While substantial or overwhelming pretrial publicity creates a heightened duty to probe prospective jurors' impartiality, pretrial publicity that is not so substantial does not require a district judge to question prospective jurors at length. *See United States v. Polizzi*, 500 F.2d 856, 868, 878-80 (9th Cir. 1974) (affirming trial judge's use of limited questioning regarding pretrial publicity of defendants convicted of conspiring to racketeer in Las Vegas casino despite pretrial publicity about mafia's role in such actions); *see also United States v. Lazo*, 816 F. App'x 752, 761 (4th Cir. 2020) (affirming district court's denial of MS-13 defendants' proposed jury questionnaire despite United States President's recent condemnation of that gang). "The court closest to the situation can best evaluate the proper way to walk the difficult line between a vigorous voir dire to determine any possible bias and avoidance of creating bias by specific questions which add 'fuel to the flames' in suggesting the presence of controversial issues." *Polizzi*, 500 F.2d at 880.

Indeed, a district court may reasonably conclude that a screening questionnaire might cause more harm than good by, for instance, stimulating inquiry into the case or issues involved in the case. *See United States v. Soto-Barraza*, 799 F. App'x 456, 458 (9th Cir. 2020). This is especially true in a case such as this where, respectfully, the United States disagrees with Defendants' argument that the issues

3

involved are more likely to be subject to prospective juror bias than the mine run of cases that come before this Court. Specifically, regarding the genetic testing that is the subject of the charged anti-kickback behavior, the fact that it was meant to assist in treating patients using prescribed opioids is unlikely to cause the type of prejudice that can be associated with the illicit distribution of narcotics. *Cf. United States v. Toomey*, 764 F.2d 678, 680, 682 (9th Cir. 1985) (cited by Defendants) (defendant bought 100 kilos of heroin base for $750,000, so that it could be converted into heroin and distributed in the United States). To the extent there is some potential for prejudice or bias based on the medical issues involved in this case, the United States respectfully submits that the Court's prior Order for the parties to file and serve on opposing counsel any special questions requested to be put to prospective jurors by the Court during voir dire at least four court days prior to trial (ECF No. 67 at 4, ¶ 12) is sufficient to screen for such prejudice or bias.

**B. Alternatively, the Court Should Allow the United States To Challenge Specific Portions of the Proposed Questionnaire in a Motion in Limine**

If the Court is inclined to grant Defendants' motion, the United States requests an opportunity to object to specific questions in the proposed questionnaire in a motion in limine. There are multiple issues with Defendants' proposed questionnaire. First, it requests too much personally identifiable information from perspective jurors, including dates of birth and addresses. *Cf. In re Jury Questionnaires*, 37 A.3d 879, 883 (D.C. 2012) ("The questionnaire identified prospective jurors only by their juror number; no personally identifiable information such as names, addresses, or social security numbers was sought.") (case involved prosecution of murderer of Chandra Levy, whose affair with a

4

Congressperson created a high level of publicity). Furthermore, many of the questions on Defendants' proposed questionnaire appear inappropriately "unfocused," risk producing "unmanageable data," and at best shed light on "preconceptions" that questioning in Court will likely already probe. *Cf. United States v. Tsarnaev*, 142 S. Ct. 1024, 1035 (2022). Such questions include questioning potential jurors on: all groups or organizations they are associate with; what books they like to read; what media and social media sites they use or blog on generally; and whether they have participated in classes, discussion groups, blogged, seen a film, read a book, saw a website or social media, or heard or saw any news with regard to certain subjects associated (sometimes tangentially) with this case. *Cf. United States v. Anekwu*, 695 F.3d 967, 978 (9th Cir. 2012) ("[T]rial court may refuse questions which are 'tied to prejudice only speculatively.'"). The problems with such questioning was well articulated by District Judge Robert S. Gawthrop III:

> [Prospective jurors'] privacy rights—"to be let alone"—are not, of course, absolute. Their jury service does expose them to some searching inquiry as to such matters as their ability to be fair, their absence of preconceived, fixed opinions. But there must be some balance, some drawing the line, and when hard-charging counsel are in hot pursuit of every little empirical nugget they get their eyes on, it is the trial judge who must, sua sponte, reign them in and give the jurors some protection. . . .
> [T]he United States Department of Justice, and defense counsel, have no business knowing what book a juror is currently reading, presumably within the quiet confines of his or her own home—or wherever, for that matter. Neither may they properly inventory the jurors' bookshelves and magazine racks, nor scrutinize their library cards. Whatever marginal insights trial lawyers and their jury consultants may gain from this information is markedly outweighed by concerns Orwellian. When one comes into court to serve as a juror, one gives up plenty: time, freedom, and the usual right to read, hear, and see the news—to name but a few of the sacrifices. But to be subjected to such inquiries as those here would be to give up more than is necessary for the proper and fair administration of justice. The lawyers may certainly ask

> whether jurors have read or heard about the defendant or any lawyer or witness involved in the case, or anything about the case. Should the answer be "yes", they shall be permitted full follow-up questioning with individual voir dire. But whether they watch Sixty Minutes, or Dateline, or Nightline, or Baywatch, for that matter, as fascinating as some might find these snippets of information to be, sheds no real light on whether they have formed a fixed opinion as to what the verdict in this yet-untried case would be, or whether they would approach it with even a hint of bias.

*United States v. McDade*, 929 F. Supp. 815, 817-19 (E.D. Pa. 1996); *see also United States v. Serafini*, 57 F. Supp. 2d 108, 112 (M.D. Pa. 1999) ("In other words, an intrusion into the prospective jurors' personal and private thoughts is warranted when a question has great probative value with respect to the issues in the case or the ability of the prospective juror to be fair, unburdened by strongly-held opinions. But as the connection between the voir dire question and matters of actual bias or fair-mindedness becomes attenuated, the intrusion into the prospective juror's personal and private thoughts cannot be sanctioned."). Defendants' questionnaire frequently probes into areas far removed from reasonable inquiries into prejudice or bias. Since the United States argues the use of the entire questionnaire should be denied, it would likely waste the parties' and the court's resources to dig too deeply into which proposed questions are especially problematic and the exact wording of questions that might otherwise be permitted. But if the Court is inclined to allow some sort of questionnaire, the United States requests the opportunity to further articulate the problems with Defendants' proposed version.

**III. CONCLUSION**

For the foregoing reasons, the Court should deny defendant's motion for a screening jury questionnaire.